## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JON WARD,                            )
                                     )
           Plaintiff,            )
                                     )
     v.                            )     Civil No.   15-1117-JAR
                                     )
CAROLYN W. COLVIN,                   )
ACTING COMMISSIONER OF               )
SOCIAL SECURITY,                     )
                                     )
           Defendant.            )

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Jon Ward's application for a period of disability and disability insurance benefits under Title II of the Social Security Act.[1]   Because the Court finds that Defendant Commissioner's findings are supported by substantial evidence, the Court affirms Defendant's decision.

## I.      Procedural History

On November 17, 2011, Plaintiff protectively applied for a period of disability and disability insurance benefits, alleging an onset date of February 18, 2010.   Plaintiff was last insured for disability insurance benefits on December 31, 2015.   Plaintiff's applications were denied initially and upon reconsideration.   Plaintiff timely requested a hearing before an administrative law judge ("ALJ").   After a hearing, the ALJ issued a decision finding that Plaintiff was not disabled; the Appeals Council denied Plaintiff's request for review of the ALJ's decision.   Plaintiff then timely sought judicial review before this Court.

---

[1]42 U.S.C. §§ 401–434.

## II.    Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[2]   The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]   In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[4]

## III.    Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[5]   An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[6]   The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[7]   If the ALJ determines the claimant is disabled or not disabled at any step along the

---

[2]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[3]*Id.* (quoting *Castellano*, 26 F.3d at 1028).

[4]*Id.*

[5]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[6]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[7]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

way, the evaluation ends.[8]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[9] since February 18, 2010, the alleged onset date. Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: disorders of the back (cervical and lumbar spine). Nor does Plaintiff challenge the ALJ's determination at step three that he does not have an impairment or combination of impairments that meet or equal a listing.

But Plaintiff challenges the ALJ's determination of Plaintiff's Residual Functional Capacity ("RFC"), which Plaintiff argues is the product of the ALJ erroneously giving no weight to the opinion of his treating physician, Dr. Reiswig, and also improperly evaluating Plaintiff's credibility.

## IV. Discussion

The ALJ found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except occasionally climbing ramps and stairs but never ladders, ropes and scaffolds; occasionally balancing, stooping, kneeling and crouching but never crawling; frequently using bilateral upper extremities to reach overhead, push and pull; frequently using the right and upper left extremities for gross and fine manipulation; performing tasks not requiring constant rotation of the cervical spine; with no concentrated exposure to extreme cold and vibration.

Dr. Jeffrey Reiswig, who is Plaintiff's primary care provider and who treated Plaintiff from April 2009 to August 2013, rendered three opinions that the ALJ gave only "partial and

---

[8] *Id.*

[9] *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

limited evidentiary weight." First, in an October 16, 2012 treatment note, Dr. Reiswig opined that Plaintiff had debilitating pain that made it difficult to do any activity, including activity with his hands, and including work activity. In an August 16, 2013 treatment note, Dr. Reiswig again opined that Plaintiff could not work "due to worsening problems with his joints, neck, lower back. . . ." And, in a February 15, 2014 letter, Dr. Reiswig opined that Plaintiff was ". . . totally disabled due to medical and emotional issues." But these opinions were not entitled to weight or deference because they invaded the province of the ALJ to determine the ultimate question of whether Plaintiff was disabled.

Dr. Reiswig also rendered an opinion about Plaintiff's functional limitations, in an August 18, 2013 Medical Source Statement. There were key differences in Dr. Reiswig's opinion about Plaintiff's functional limitations and the ALJ's RFC determination. The ALJ found no limitation in lifting; Dr. Reiswig opined that Plaintiff could only occasionally lift less than five pounds. The ALJ found no limitation in the ability to sit, stand or walk; Dr. Reiswig opined that Plaintiff could only occasionally sit and stand, could walk less than fifteen minutes at a time, could walk less than one hour in an eight-hour workday, and that Plaintiff would need to lie down or recline every hour for at least fifteen minutes throughout the day.

Moreover, whereas the ALJ found that Plaintiff could frequently reach overhead, push and pull, and use both upper extremities for gross and fine manipulation, Dr. Reiswig opined that Plaintiff was unable to push and pull, and could only occasionally reach, handle, finger or feel objects. And, whereas the ALJ found that Plaintiff could occasionally climb ramps and stairs and occasionally balance, stoop, kneel and crouch; Dr. Reiswig opined that Plaintiff was unable to do any of those functions. Finally, Dr. Reiswig opined that Plaintiff could work only subject

to environmental limitations that were not included in the ALJ's RFC.

Plaintiff argues that the ALJ improperly gave little evidentiary weight to these opinions of Dr. Reiswig, his primary treating physician. To be sure, "[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."[10] But, a treating source provider's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record; but if it is "deficient in either respect, it is not entitled to controlling weight."[11] And, even if the opinion of a treating provider is not worthy of controlling weight, it must still be accorded deference and must still be evaluated in light of the factors set forth in the relevant regulations.[12]

In *Goatcher v. U.S. Dep't of Health & Human Services*,[13] the Tenth Circuit directed that the ALJ consider the following factors in determining what weight to give any medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors

---

[10]*Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)).

[11]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374184, at *5 (July 2, 1996)).

[12]*Hamlin*, 365 F.3d at 1215.

[13]52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)–(6)).

brought to the ALJ's attention which tend to support or contradict the opinion.[14]

It is evident that the ALJ considered the *Goatcher* factors in evaluating Dr. Reiswig's opinion, for the ALJ clearly expressed her reasons for giving Dr. Reiswig's opinion only limited weight, and in finding that Plaintiff's limitations are not as extreme as Dr. Reiswig opined. First, the ALJ acknowledged that Dr. Reiswig was Plaintiff's primary care physician who treated him from April 23, 2009 until August 16, 2013. The ALJ noted the examinations and treatment Dr. Reiswig administered, as well as his referral of Plaintiff for MRIs and to a physician for periodic epidural injections for pain.

And, the ALJ noted that during the four-year-treatment relationship, there were significant gaps in time, caused by Plaintiff's "relatively infrequent trips to the doctor for the allegedly disabling symptoms." The Court agrees. Plaintiff first saw Dr. Reiswig in April 2009, complaining of pain in the lower back, but did not see Dr. Reiswig again until July 2010, a few months after his alleged onset date of February 18, complaining of neck pain, but not complaining of back or shoulder pain. His next visit with Dr. Reiswig was a year later, in August 2011. From August 2011 to August 2013, Plaintiff saw Dr. Reiswig more regularly, but still rather infrequently, and not always for neck, back or shoulder pain. The frequency of the treatment relationship is relevant in assessing the weight to be accorded to the physician's opinion.

Moreover, the ALJ clearly expressed her findings that Dr. Reiswig's opinion that Plaintiff had extreme functional limitations was inconsistent with both the medical evidence and the non-medical evidence. Most importantly, given that Dr. Reiswig was the only treating

---

[14]*Id.*

6

physician with an ongoing relationship with Plaintiff, and given that Dr. Reiswig was treating

Plaintiff for the impairments at issue in this case, Dr. Reiswig's treatment notes should reflect or

support his opinions about Plaintiff's extreme functional limitations.   But other than recording

Plaintiff's subjective complaints about the nature, severity and effect of his pain and symptoms,

Dr. Reiswig's treatment notes do not support his opinions that Plaintiff can only occasionally use

fine motor skills to reach, handle or finger objects, and can only occasionally lift less than five

pounds.   Similarly, nothing in the treatment notes objectively supports Dr. Reiswig's opinions

that Plaintiff needs to recline fifteen minutes every hour and cannot walk more than fifteen

minutes at a time, can only occasionally sit or stand, and can never climb ramps or stairs.

Other medical evidence, based on physical examinations of Plaintiff and objective

evaluations, contradicts Dr. Reiswig's opinions.   In September 2012, Dr. Morrow, an agency

consultant, examined Plaintiff, and his objective findings starkly contrast with Dr. Reiswig's

opinions.   Dr. Morrow concluded that Plaintiff has lumbar and cervical arthralgias, with limited

rotation in the cervical region and a slight reduction in straight leg raising on the right.   But, the

rest of his objective, clinical exam-based findings were normative.   Dr. Morrow's examination

revealed that Plaintiff had twenty-two pounds grip strength with his dominant right hand and

sixteen with his left hand and that Plaintiff's dexterity was preserved, that is, he could adroitly

use his hands.   Dr. Morrow's examination also revealed that Plaintiff had no signs of carpal

tunnel; the Tinel and Phalen tests were negative bilaterally.   All of this contradicts Dr.

Reiswig's opinion that Plaintiff can only occasionally use fine motor skills to reach, handle or

finger objects.     Moreover, Dr. Morrow's findings are consistent with the opinion of Dr.

Schrandt, a dermatologist who treated Plaintiff for lesions on his hands in May 2013.   Based on

examination of Plaintiff, Dr. Schrandt opined that Plaintiff could frequently do fine manipulation with both hands and constantly do gross manipulation with both hands. There were no limitations in Plaintiff's ability to grip.

Dr. Morrow's examination further revealed that while Plaintiff had moderate difficulty with hopping, he had only mild difficulty with other orthopedic manuevers, such as heel and toe walking, and no difficulty getting off and on the examination table, all without the use of any assistive device. Dr. Morrow's examination also revealed some limited rotation in the cervical region, and a slight reduction in straight leg raising on the right, but otherwise normal movements in leg raising while standing and sitting, in bending to the floor, in reflexes and in motor function. Dr. Morrow found no signs of osteoarthritis, such as Heberden's nodes. All of this contradicts Dr. Reiswig's opinion that Plaintiff can only occasionally sit or stand, can never climb ramps or stairs, and cannot walk more than fifteen minutes, nor stand or sit more than fifteen minutes without reclining.

Still other medical evidence is consistent with the findings of Dr. Morrow, and the ALJ's determination of RFC. Dr. Marlowe, who read MRIs of Plaintiff's cervical and lumbar spine in January 2012, found only minimal degenerative changes in the cervical spine, with tiny foraminal disk protrusion with no significant neuroforaminal narrowing, and no spinal stenosis and only mild left neuroforaminal narrowing with no significant nerve impingement. Dr. Marlowe similarly found only mild degenerative changes in the lumbar spine with no significant neuroforaminal narrowing and no spinal stenosis. In short, the objective medical evidence does not support Dr. Reiswig's opinions.

It appears that Dr. Reiswig's opinions were largely based on Plaintiff's subjective

complaints of pain and other symptoms. To be sure, when evaluating pain or other symptoms, the ALJ must duly consider the claimant's subjective complaints. Here, the ALJ acknowledged that she must perform a two-step evaluation, first determining whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms; and then, taking into consideration the entire case record, evaluating the intensity, persistence, and functionally limiting effects of the symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities.[15] Here, the ALJ found that the objective medical evidence did not support Plaintiff's claims as to the intensity, persistence or limiting effects of his physical or mental impairments.

Since the ALJ found that Plaintiff's statements about the intensity, persistence or functionally limiting effects of his physical symptoms were not substantiated by objective medical evidence, it was incumbent upon the ALJ to must make a finding on the credibility of Plaintiff's statements, based on consideration of the entire case record.[16] In evaluating a claimant's credibility of a claimant's subjective symptoms, the Tenth Circuit counsels that the ALJ should consider a nonexhaustive list of factors:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.[17]

---

[15] *Jones v. Astrue,* 500 F. Supp. 2d 1277, 1288–89 (D. Kan. 2007).

[16] *Id.*, (citing SSR 96-7p, 1996 WL 374186 (July 2, 1996)).

[17] *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)(citing *Thompson v. Sullivan*, 987 F.2d 1482, (10th Cir. 1993)).

The ALJ duly considered a number of these factors in discrediting Plaintiff's complaints and in concluding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . . ."    These same factors illustrate that Dr. Reiswig's opinion was not supported by either medical or non-medical evidence.

First, as the ALJ found, Plaintiff's course of treatment was not consistent with someone suffering disabling symptoms as Plaintiff describes.   Plaintiff saw Dr. Reiswig rather infrequently.   Plaintiff first saw Dr. Reiswig in April 2009, complaining of back pain that radiated to his hips.   Although Plaintiff saw Dr. Reiswig in August 2009 for gastrointestinal symptoms, that treatment record does not mention any complaints about his back, neck or shoulders.   Plaintiff did not present to Dr. Reiswig again with complaints about pain until July 2010, more than a year after the April 2009 visit, and some four months after the alleged onset date of February 18, 2010.   After the July 2010 visit, Plaintiff only presented to Dr. Reiswig with complaints related to his neck, shoulder and/or back, in August and December of 2011, in February, July, August and December of 2012, and in August of 2013.   Otherwise, Plaintiff simply called in to get his prescriptions refilled.

Not only did Plaintiff see Dr. Reiswig infrequently, the course of treatment was conservative, indicating that Plaintiff's symptoms were not as severe as Plaintiff claims or as Dr. Reiswig opines.   Beginning in April 2009, Dr. Reiswig prescribed Lortab, and in August 2011, Dr. Reiswig added a second pain medication, Tramadol.   Dr. Reiswig never changed the prescriptions and never increased the dosages of Lortab and Tramadol throughout the course of treatment.   After obtaining cervical and lumbar MRIs in January 2012, Dr. Reiswig referred Plaintiff for epidural injections, which Plaintiff received periodically from March 2012 to

December 2012.   Plaintiff claimed the epidurals never allowed him more than two weeks of pain relief, and that he could not afford to get more epidurals.   Yet Dr. Reiswig never recommended any more aggressive forms of treatment, and Plaintiff relied upon the prescribed pain medications, physical therapy, a chiropractor and moist heat.   Plaintiff never used an assistive device nor a TENS unit.

Still other factors supported the ALJ's credibility analysis.   As the ALJ explained, Plaintiff's subjective complaints to medical providers were inconsistent.   First, he was inconsistent about where the pain was located.   In April 2009, Plaintiff complained of lower back pain that radiated to his hip.   But at his next visit for these pain issues in July 2010, Plaintiff complained of neck pain but did not mention his back or shoulders.   In August 2011, Plaintiff complained of pain in his neck and back that radiated to his arms and legs.   In December 2011, he complained of pain in his neck and shoulders, mild lower back pain, and neck pain radiating to his right arm.   In February 2012 he complained of daily, continuous pain in shoulders, as well as neck pain.   In March 2012, Plaintiff told Dr. Sollo, who administered the epidurals, that for over a year he had had pain in his lower back radiating to his leg.   In July 2012, he complained that he had pain in his knees and fingers, and did not mention his back, arms, neck or shoulders.   When Dr. Morrow examined him in September 2012, Plalintiff reported that he had a history of pain in his lower back and neck that did *not* radiate.   In October 2012 he reported to Dr. Reiswig that he had neck pain radiating to his arm, and regular pain in his shoulders and lower back, as well as pain in his hands that made it difficult to do any activity with his hand.   In December 2012, Plaintiff reported to Dr. Sollo that he had pain in his neck radiating to his shoulder and in August 2013, he reported to Dr. Reiswig that he had worsening

11

pain in his back and neck.

Plaintiff was similarly inconsistent in reports about whether he experienced muscle weakness, numbness or tingling in his extremities. In August 2011, he reported having numbness and tingling in his arms and legs. In December 2011, he complained of having moderate weakness in his arms. In February 2012, he reported having moderate weakness in his arms. In both March 2012 and December 2012, Plaintiff told Dr. Sollo he did *not* have a history of numbness, tingling or weakness. In August 2013, Plaintiff again reported to Dr. Reiswig that he had numbness and tingling, as well as weakness in both arms.

In addition to these incongruities, the ALJ pointed to other factors that support her credibility analysis. The ALJ properly considered that Plaintiff claims an alleged onset date of February 18, 2010, around the time that he was fired from his full-time job with Learjet Bombadier for violating a company policy. Plaintiff claims the reason Learjet gave for firing him was pretextual; Learjet really fired him for his history of absences that he claims were related to his impairments. But, the ALJ properly gave credit to the statement of Plaintiff's former employer that Plaintiff did not have any difficulty performing the assigned job duties. The Court is mindful that "[c]redibility determinations are peculiarly the province of the finder of fact" and will stand when supported by substantial evidence,[18] such that courts usually defer to the ALJ on matters involving credibility.[19] The Court defers to the ALJ's well-articulated and well explained findings on credibility in this case.

## V.        Conclusion

---

[18] *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010).

[19] *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994).

For the above explained reasons, the Court concludes that the ALJ properly considered and weighed the opinion of Dr. Reiswig and properly evaluated Plaintiff's credibility, such that the ALJ properly determined Plaintiff's RFC.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **AFFIRMED.**

**IT IS SO ORDERED.**

Dated: <u>March 3, 2016</u>

 S/ Julie A. Robinson  
JULIE A. ROBINSON  
UNITED STATES DISTRICT JUDGE
